# IN THE COURT OF APPEALS OF IOWA

No. 19-0398
Filed September 23, 2020

**JOSEPH MATTHEW SMITH,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Buena Vista County, David A. Lester, Judge.

Joseph Smith appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

Jennifer Bennett Finn of Pelzer Law Firm, LLC, Estherville, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., Tabor, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VAITHESWARAN, Presiding Judge.**

Joseph Smith pled guilty to lascivious acts with a child. Smith was sixteen years old when he committed the crime and seventeen when he entered the plea. The district court sentenced him to a prison term not exceeding ten years and a special sentence of lifetime parole under Iowa Code section 903B.1 (2013). The court suspended the sentence and placed Smith on probation.

In time, the court revoked Smith's probation and imposed the original indeterminate ten-year prison term. Smith filed an application for postconviction relief, raising several ineffective-assistance-of-counsel claims. The State moved for summary disposition of Smith's allegation that his trial attorney was ineffective in failing to argue that "the mandatory special sentence of lifetime parole is violative of the constitutional protections against cruel and unusual punishment when imposed on a juvenile offender." The district court granted the motion. The court reasoned:

> At this time, [Smith] cannot show that he has been prejudiced by [his attorney's] failure to argue in the underlying criminal case that the mandatory special sentence of lifetime parole as applied to [him] violates the constitutional protections against cruel and unusual punishment because he remains in prison, and thus, is not eligible for parole.

The court held an evidentiary hearing on the remaining issues, including Smith's claims that his plea attorney (1) should have challenged his competency to enter the plea and (2) should have explained the special sentence of lifetime parole. The court rejected the claims. On the competency issue, the court concluded

> there is insufficient evidence in the record that would have led [counsel] to believe that Smith was not competent during the underlying criminal case, and thus [counsel] did not render

ineffective assistance of counsel by electing not to pursue any further investigation into or evaluation of Smith's competency to stand trial.

On the lifetime-parole issue, the court concluded Smith "met his burden of establishing" counsel's breach of an essential duty but found no prejudice "because the lifetime parole requirement was noted by the court and/or counsel multiple times during Smith's plea and sentencing hearing, and further because the court made clear to Smith at the outset of the plea proceedings that he should ask questions if he did not understand something." The court denied the postconviction-relief application.

On appeal, Smith takes issue with the district court's post-hearing denial of the two ineffective-assistance-of-counsel claims and the court's summary disposition of the cruel-and-unusual-punishment ineffective-assistance-of-counsel claim. All the claims have two components: "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

## I.     *Post-Hearing Ineffective-Assistance-of-Counsel Claims*

### A.     *Competency to Enter Guilty Plea*

The statutory test for incompetency in a criminal proceeding is whether "the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1).

> If the court, by a preponderance of the evidence, finds the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend the

criminal proceedings indefinitely and order the defendant to be placed in a treatment program . . . .

*Id.* § 812.5(2).

On our de novo review of the record, we are satisfied that Smith was competent to enter the plea. Although Smith agreed he was currently under the care of a psychiatrist or psychologist, a history of mental illness alone does not mean the defendant is incompetent. *See State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993). Smith identified his medications, albeit with one misnomer, which he later corrected, and he stated the medicines did not impair his ability to understand the proceedings. He also stated he was not under the influence of alcohol and was able to communicate with his attorney effectively.

At the postconviction hearing, Smith described a "reading disability, which kind of made it hard to understand certain words." This testimony diverged from his statement to the plea-taking court that he did not have "any difficulty reading, writing, or understanding the English language." But even if he had a reading disability, there is no question he understood his legal circumstances. He cogently explained the procedural history of the case, the process that led to appointment of counsel, and the details of his "plea deal." In his words, he "remember[ed] a lot. Everything."

We recognize Smith experienced trauma in his young life. But neither the trauma nor his mental-health diagnoses prevented him from appreciating the charge, understanding the proceedings, or effectively participating in his defense.

Smith's attorney said as much. When asked if Smith exhibited any type of communication or cognitive difficulties, he responded, "None." Additionally,

counsel spoke to staff at Smith's housing unit, who "apprised [him] of nothing that would have indicated any type of competency issue or impairment." Counsel explained, "I had no reason to believe that Mr. Smith was not legally competent and didn't know the nature of the crimes that were charged or did I ever suspect that he would be unable to assist me in any trial."

Because there was scant, if any, evidence to support the statutory definition of incompetency, counsel's failure to raise a competency challenge could not have amounted to deficient performance. We affirm the district court's denial of this ineffective-assistance-of-counsel claim.

### B.      Consequences of a Guilty Plea

Before pleading guilty, a court must inform a defendant of "the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." Iowa R. Crim. P. 2.8(2)(b)(2). This includes the special sentence of lifetime parole. *See Doss v. State*, No. 19-1285, 2020 WL 4201002, at *1 (Iowa Ct. App. July 22, 2020); *see also State v. Hallock*, 765 N.W.2d 598, 605–06 (Iowa Ct. App. 2009) (addressing Iowa Code section 903B.2).

Smith argues his attorney "fail[ed] to explain the lifetime parole requirement," rendering his guilty plea "unintelligent and involuntary." But the plea record is replete with references to the requirement. In recapping the plea agreement, the prosecutor stated Smith "would also be subject to the lifetime sex offender registry and lifetime special sentence under 692A and 903B." Smith's attorney affirmed that the prosecutor's rendition of the plea was correct. Later, the prosecutor recommended that Smith "be placed on the special sentence following

his term of probation—special sentence would be for life under 903B.1." In light of these references, and the fact that the plea allowed Smith to avoid up to ten years in prison, we are unpersuaded by Smith's belated assertion that he would have insisted on going to trial had his attorney informed him of the requirement. *See Skipper v. State*, No. 14-1401, 2015 WL 7019027, at *3 (Iowa Ct. App. Nov. 12, 2015) ("We are unconvinced Skipper would have rejected the plea agreement based upon the special sentencing provision; his goal was to avoid prison time, and he took what he viewed as his best option of achieving that goal."). We affirm the court's denial of this ineffective-assistance-of-counsel claim.

## II.  Summary Disposition of Cruel-and-Unusual-Punishment Claim

As noted, the postconviction court granted the State's partial motion for summary disposition of his constitutional challenge to the special sentence on the ground that Smith was not on parole and, accordingly, his claim was not ripe for review. Smith now asserts we should "take judicial notice of the discharge of [his] prison sentence and that he began serving his special sentence of lifetime parole on July 26, 2018." He asks us to remand the case for an evidentiary hearing on the claim. The State responds that the website Smith references "is outside the record on appeal" and "a remand is unnecessary" because Smith can move to correct an illegal sentence in his "original criminal case."

We need not address the ripeness question because, whatever Smith's current incarceration status, his claim that the special sentence of lifetime parole categorically constitutes cruel and unusual punishment when imposed on a juvenile offender was addressed and rejected in *State v. Graham*, 897 N.W.2d 476, 488 (Iowa 2017). There, the court concluded, "Graham is not entitled to relief

from his sentence as cruel and unusual based on the limited claim related to mandatory lifetime parole presented to the district court in this case." *Graham*, 897 N.W.2d at 488; *see also State v. Harkins*, 786 N.W.2d 498, 507 (Iowa Ct. App. 2009) ("We conclude that Iowa Code section 903B.1 (Supp. 2005) is not grossly disproportionate to the gravity of the offenses to which it applies and its imposition does not constitute cruel and unusual punishment."). Because the categorical challenge to the sentence is not supported by our precedent, Smith's attorney could not have been ineffective in failing to raise it.

We recognize that the district court appeared to view Smith's claim as an "as-applied" challenge to the sentence. Our conclusion that a categorical challenge may not proceed does not foreclose Smith from filing a motion to correct an illegal sentence in his criminal proceeding to raise a gross-disproportionality challenge to the lifetime-parole requirement.

We affirm the district court's denial of Smith's postconviction-relief application.

**AFFIRMED.**